# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GENE R. EATINGER, on behalf of himself
and all similarly situated royalty owners,

*Plaintiffs*,

vs.

Case No. 07-1266-EFM

BP AMERICA PRODUCTION COMPANY,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Gene R. Eatinger, on behalf of himself and other royalty owners of wells located in Kansas, brings claims against Defendant BP America Production Company ("BP") for underpayment or non-payment of royalties on natural gas and/or constituents of the gas stream produced from Kansas wells leased by BP. From Plaintiffs' Amended Complaint, they claim that they are beneficiaries of an implied covenant with BP through which BP is obligated to place the gas extracted from their wells, along with all constituent parts, in marketable condition at no cost to Plaintiffs. Contrary to this implied covenant, Plaintiffs claim that BP deducted from their royalty payments or otherwise charged them for placing the gas and constituent parts in marketable condition. In addition, Plaintiffs claim BP paid them a lower starting price than it received in arms-length sales transactions, and further claim that BP made no payments at all for gas constituents such as condensate, nitrogen, and helium. Plaintiffs also allege that BP made misleading and fraudulent

representations regarding methods of calculation and forms of payment. BP has moved for summary judgment as to claims advanced by the prospective plaintiff class covered by perviously-settled class actions in Kansas.[1]

## I. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[4] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[5]

When the moving party does not bear the burden of persuasion at trial, it bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[6] The moving party is not required to disprove the nonmoving party's claim or defense,

---

[1] Plaintiffs initially alleged claims concerning wells in Kansas, Colorado, and Wyoming, and BP's summary judgment motion argued that, in addition to the prior Kansas class action settlements, Plaintiffs' Colorado and Wyoming claims were similarly barred based on class action settlements and releases in those states. The parties, however, have stipulated to amending the class definition to include only those claims concerning Kansas wells, making summary judgment on issues relating to Colorado and Wyoming wells moot.

[2] Fed. R. Civ. P. 56(c).

[3] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[4] *Id.*

[5] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

but must only establish that the factual allegations have no legal significance.[7]  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[8]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[9]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[10]

Conversely, a more stringent summary judgment standard applies when the moving party has the burden of proof.  In such circumstance, to obtain summary judgment, the moving party may not force the nonmoving party to come forward with "specific facts showing there [is] a genuine issue for trial" merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact.[11]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[12]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[7]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[8]*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

[9]*Celotex*, 477 U.S. at 323.

[10]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[11]*Celotex*, 477 U.S. at 323.

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II. DISCUSSION

BP moves for summary judgment on the basis that Plaintiffs' claims replicate claims previously advanced and settled by two prior certified class actions, *Youngren v. Amoco Production Co.*,[14] and *Smith v. BP America Production Co.*[15] Plaintiffs have responded by arguing that before the Court can give *res judicata* effect or release to either settlement, the Court must fully review each case to determine whether due process was satisfied in those cases. Plaintiffs argue that a court subsequent to a class action settlement must evaluate and determine whether adequate representation existed at all times throughout the prior litigation and settlement before that prior settlement has any binding affect on members of the class. Plaintiffs also assert that for a prior settlement to satisfy due process, the Court must find adequate notice was sent to the absent class members. To make these findings, Plaintiffs argue that the Court must complete a "hindsight" evaluation of the prior action and determine that the class members' interests were in fact vigorously pursued and protected in the prior class action litigation. Plaintiffs contend that if the Court is unable to make this determination, then it cannot give *res judicata* effect to the prior settlement.

### *a. Prior Litigation*

Both *Youngren* and *Smith* involved claims concerning royalty payments made by BP for wells that were at any time dedicated to a certain Gas Purchase Contract, dated June 23, 1950 (the "Leases"), between BP's predecessor and the predecessor of Williams Natural Gas Company. In *Youngren*, the plaintiff class claimed that BP's predecessor, Amoco Production Company, failed to properly calculate and pay royalties under the Leases by deducting a gathering fee from such

---

[14]No. 98 CV 22 (26th Judicial Dist., Stevens County, Kan. July 1, 2004).

[15]No. 99 C 21 (26th Judicial Dist., Stevens County, Kan. May 24, 2006).

payments. The *Youngren* claims only applied to the Leases insofar as such were productive of gas from above the base of the Panoma Council Grove Field from September 9, 1990 through July 2004.[16] The Notice of Class action, which was included in the *Youngren* settlement agreement, informed putative class members that:

> This lawsuit does not raise any other possible claim the Named Plaintiffs or members of the class may have against Amoco including, but not limited to, (1) any claim that Amoco has not used the proper starting point for calculation of royalty payments; (2) any claim that Amoco has failed to make proper royalty payments in connection with any extracted liquid hydrocarbons or helium; (3) any claim that Amoco has improperly deducted expenses it has incurred after the gas exits the Jayhawk Plant, east of Ulysses, Kansas; and (4) any claim that the deductions from royalty payments are unreasonable in amount (as opposed to the claim asserted herein that those deductions are not permitted to be taken in their totality).[17]

As part of the *Youngren* Settlement Agreement, which was incorporated into the final judgment, the plaintiff class accepted a broad release of claims including those just stated along with the following:

> [A]ny and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment, or in the future, directly, representatively, derivatively, or otherwise by the members of the Plaintiff Class based on any facts, circumstances, transactions, events, occurrences, statements, acts, omissions, failures to act, conflicts of interest, tortious acts, intentional acts, negligent acts, grossly negligent acts, acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to August 2004, which were or could have been properly alleged under K.S.A. § 60-223 by the Plaintiffs on behalf of the Plaintiff Class, and in any way related to the Leases, Amoco's operation of the Leases or Amoco's failure to operate the Leases,

---

[16]The *Youngren* class was defined as "[a]ll persons or concerns owning mineral interests in lands from and after September 9, 1990, burdened by oil and gas leases owned in whole or in part by defendant [Amoco Production Company], insofar as such leases are productive of gas from above the base of the Panoma Council Grove Field, which were at any time previously dedicated to that certain Gas Purchase Contract, dated June 23, 1950, between the predecessor of defendant and the predecessor of Williams Natural Gas Company . . . ." Doc. 54-1, p.14 (*Youngren* Set. Agr. p.2 ¶ D).

[17]*Id.* at ¶ E.

including, but not limited to, claims that . . . Amoco should not have deducted Gathering Charges in calculating royalty . . . ; Amoco failed to use the proper starting point for calculation of royalty . . . or used an improper formula in calculating the royalty . . . ; Amoco has failed to make proper royalty payments . . . in connection with any extracted liquid hydrocarbon or helium produced from the Leases . . . ; Amoco has improperly deducted expenses it incurred after the gas exits the Jayhawk Plant . . . ; deductions taken by Amoco in calculating royalty owed . . . was unreasonable in amount . . . ; Amoco failed to pay the market value of the gas at the well . . . for gas produced from the Leases but sold downstream . . . and/or that Amoco failed to pay the proper amount of royalty owed . . . with respect to gas sold at the well . . . ; Amoco failed to pay pre-judgment interest attributable to underpayment of royalties . . . [under Kansas law] and/or under any other legal or equitable theory; Amoco should have, among other things, sold gas at a higher price, should have paid more royalties, should have sold a greater volume of gas, should have extracted additional liquids from gas that was or should have been produced . . . ; Amoco failed to properly administer the 1950 Contract between Amoco and Williams Natural Gas Company . . . , any opportunities afforded to Amoco by FERC Order 451 related to the 1950 Contract . . . , to permit release of gas for sale to third parties with or without take-or-pay crediting required under FERC Order 500 . . . ; Amoco breached duties owed to members of the Plaintiff Class under the Leases, or in connection with the administration of the 1950 Contract, due to alleged conflicts of interest . . . .[18]

The court of the 26th Judicial District, Stevens County, Kansas approved final judgment in *Youngren* on July 1, 2004.[19] In doing so, the court found that Plaintiffs' counsel mailed proper Notice to all members of the Plaintiff Class who could be reasonably identified, and indicated proper publication had been made. In addition, that court found that reasonable notice of the fairness hearing for approving settlement and entering final judgment had been given to members of the Plaintiff Class. The court further inquired into whether there were any objections as to the claims proposed to be settled or released by the Settlement Agreement, and found none had been filed. The court then found that each of the Settled Claims either had or could have been asserted on behalf of

---

[18]*Id.* at 21-23 (*Youngren* Set. Agr. ¶ 1.24).

[19]*Youngren* was initially filed on May 12, 1989. Doc. 54-1.

the Plaintiff Class.[20]  After finding that the Settlement was the result of an arms-length, vigorous and extensive negotiation, and arrived at in good faith based on a realistic appraisal of the inherent difficulties of the case, the court concluded that the Settlement was "fair, reasonable, bona fide and adequate to the Plaintiff Class as required by K.S.A. 60-223."[21]  The court then Ordered, Adjudged and Decreed that the Settled Claims as defined by the Journal Entry of Judgment "for all time periods through the date of this judgment, are fully and completely settled, discharged, and released," and dismissed said claims with prejudice.[22]  As a result of this settlement, Amoco paid $49,000,000 into the settlement fund, from which Plaintiffs' attorneys received one-third after deduction of expenses.

*Smith* concerned claims that BP improperly reduced royalty payments for natural gas on a per Mmbtu basis due to renegotiation, amendment to or temination of, the 1950 Contract for the period of January 23, 1987 through December 31, 1992.[23]  Similar to *Youngren*, *Smith* contained a broad release of claims.  The settlement defined "Released Claims" as:

> [A]ny and all claims, demands, rights, liabilities, and causes of actions of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, that might have been asserted prior to entry of Judgment in the Pending Lawsuit, or in the future, directly, representatively, derivatively, or otherwise by Plaintiff, by the Plaintiff Class or by members of the "Settlement Class"

---

[20]Doc. 54-1, pp.2-6.

[21]*Id.* at 9, ¶ 1.

[22]*Id.* at 9-10, ¶¶ 2-3.

[23]The *Smith* class was defined as "all persons owning mineral interest [*sic*] that were burdened by oil and gas leases ("Leases") owned in whole or in part by Amoco Production Company, Inc. ("Amoco") which Leases were dedicated to that certain Gas Purchase Contract dated June 23, 1950 (the "1950 Contract"), as amended, between predecessors of BP Amoco and Williams Natural Gas Company ("WNG"), whose royalty payments for natural gas were reduced on a per Mmbtu basis due to renegotiation, amendment to or termination of said 1950 Contract between January 23, 1987, the effective date of Order 451 issued by the Federal Energy Regulatory Commission ("FERC") and December 31, 1992.  Doc. 54-4 p.10 (*Smith* Set. Agr. ¶ 2).

> . . . based on any facts, circumstances, transactions, events, occurrences, . . . negligent acts, . . . acts of unjust enrichment, breaches of express Lease provisions, breaches of implied covenants and duties arising under the Leases, or breach of other duties which occurred at any time prior to May 1, 2006, which were or could have been properly alleged under K.S.A. § 60-223 by the Plaintiff on behalf of the Plaintiff class or on behalf of the Settlement Class, and which are in any way related to the Leases, BP/Amoco's operation of the Leases or BP/Amoco's failure to operate the Leases.[24]

In addition to the foregoing, the *Smith* Settlement also released, among others, claims that BP/Amoco:

> [B]reached the implied covenant to market and the duty to obtain the best possible price possible for gas sold from the Leases; breached the duty to act in good faith and to deal fairly with the Plaintiff Class; BP/Amoco breached duties . . . when it invoked FERC Order 451 to renegotiate the price under the 1950 Contract . . . ; breached duties owed . . . by trading away higher prices to which the Plaintiff Class was entitled for other benefits which BP/Amoco, but not the Plaintiff Class, received; breached . . . duties owed to the Plaintiff Class who was receiving the maximum lawful price (MLP) under the NGPA [National Gas Policy Act] that were below spot market prices; breached duties . . . by not accounting to the Plaintiff Class on the basis of the difference between the MLP on the volumes of gas sold from Leases pursuant to releases from the 1950 Contract and the spot market prices actually received by BP/Amoco from the effective date of FERC Order 451 through December 31, 1992; should not have deducted Gathering Charges in calculating royalty . . . ; failed to use the proper starting point for calculation of royalty . . . and/or used an improper formula in calculating the royalty paid on gas produced from the Leases; failed to make proper royalty payments . . . in connection with any extracted liquid hydrocarbon or helium produced from the Leases; [and] improperly deducted expenses it incurred after the gas exits the Jayhawk Plant; deductions taken by BP/Amoco in calculating royalty owed . . . were unreasonable in amount; BP/Amoco failed to pay the market value . . . for gas produced from Leases but sold downstream of the lease and/or . . . failed to pay the proper amount of royalty owed . . . with respect to gas sold at the well from the Leases; BP/Amoco should have . . . sold gas at a higher price.[25]

On August 21, 2006, the court of the 26th Judicial District, Stevens County, Kansas, after conducting a fairness hearing concerning the proposed *Smith* Settlement Agreement, entered final

---

[24]*Id.* at pp.3-4 ¶ 1.7.

[25]*Id.* at pp.4-9.

-8-

judgment in which it dismissed all claims against BP/Amoco with prejudice.[26] As part of the court's final judgment, it found that notice had been given in the manner approved by the court, and that such notice "fully and accurately informed all members of the Settlement Class of all material elements of the proposed settlement, constituted the best notice practicable under the circumstances, [and] constituted valid, due, and sufficient notice to all Settlement Class members."[27] Concluding that the *Smith* Settlement Agreement was "fair, reasonable and adequate in all respects to members of the Settlement Class," the court approved settlement and ordered that the "Released Claims are to be dismissed with prejudice under the terms of the Settlement Agreement."[28] The court further ordered that:

> All Settlement Class members, except those who have been excluded as shown on Exhibit A, shall conclusively be deemed to have released and forever discharged BP/Amoco, and their agents, . . . from all Released Claims and all such Settlement Class members shall forever be enjoined and barred from asserting, instituting, or prosecuting, in any capacity, before any court or governmental agency, any action or proceeding against BP/Amoco or any of the Released Parties that involves or asserts any of the Released Claims.[29]

Pursuant to the *Smith* Settlement Agreement, BP/Amoco paid $3,500,000 for disbursement to class members, attorneys' fees and other expenses related to the action.

### b. *Res judicata as Applied to Class Actions*

A class action enables a lawsuit to proceed where the number of parties interested in the

---

[26] Doc. 54-6, p.1. *Smith* was filed in the 26th Judicial District, Stevens County, Kansas in 1999.

[27] *Id.* at 3

[28] *Id.* at 3-4, ¶¶ 4, 7.

[29] *Id.* at 10, ¶ 10.

litigation is too great to permit joinder.[30]  Under the doctrine of *res judicata*,[31] "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[32]  A court may apply *res judicata* when there exists: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits.[33]  Preclusion principles will typically not apply to persons who were not a party to the prior suit, because generally, those parties did not have the opportunity to participate in the litigation or settlement of the issues in that suit.[34]  However, there exists an exception to this rule where there is " 'privity' between a party to the second case and one who is bound by an earlier judgment."[35]  To find "privity," there must exist, at a minimum, "a substantial identity between issues in controversy and showing the parties in the two actions are really and substantially in interest the same."[36]

The Supreme Court noted further exception to the rule against nonparty preclusion where a nonparty agreed "to be bound by determination of issues in an action between others," and in

---

[30]*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (citing *Hansberry v. Lee*, 311 U.S. 32, 41 (1940)).

[31]"*Res judicata*" is also known as "claim preclusion." *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999).

[32]*Pelt*, 539 F.3d at 1281 (quoting *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002)).

[33]*MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

[34]*See Taylor v. Sturgell*, --- U.S. ----, 128 S.Ct. 2161, 2171 (2008).

[35]*Pelt*, 539 F.3d at 1281 (citing *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996)).

[36]*Id.* The Supreme Court has explained that "[t]he substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.' . . . The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground . . . ." *Taylor*, 128 S.Ct. at 2172 n.8.

certain limited circumstances, where there was adequate representation "by someone with the same interests who [wa]s a party to the suit."[37] "Representative suits with preclusive effect on nonparties include properly conducted class actions."[38]

Absent parties to a class action are bound by the judgment in that action "so long as the named parties adequately represented the absent class and the prosecution of the litigation was within the common interest."[39] Minimal procedural due process protections, however, must have been provided to the absent class to bind them to any such judgment.[40] Due process requires that a putative plaintiff receive notice along with an opportunity to be heard and participate in litigation. The notice "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "[41] Due process also requires, at a minimum, that "an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court."[42] In addition to the foregoing, the named plaintiff must at all times adequately represent the interests of the absent class members.[43] "A party's representation of a non-party is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative were aligned; and (2) either the party understood

---

[37]*Taylor*, 128 S.Ct. at 2172.

[38]*Id.* (citing *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

[39]*Shutts*, 472 U.S. at 808.

[40]*Id.* at 811-12.

[41]*Id.*

[42]*Id.* at 812.

[43]*Id.*

-11-

herself to be acting in a representative capacity or the original court took care to protect the interests of the non-party."[44]

The due process requirement of adequate representation exists "at all times" throughout the litigation.[45] A court adjudicating the earlier decision cannot by itself "predetermine the *res judicata* effect of its own judgment; that can only be determined in a subsequent suit."[46] The Tenth Circuit, in *Pelt*, discussed the standard for adequacy of representation:

> The standard for evaluating adequacy of representation in a class action suit was discussed by the Fifth Circuit in *Gonzales* [*v. Cassidy*],[47] where the court established a two-prong test to determine whether adequacy of representation was satisfied: "(1) [d]id the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) [d]oes it appear, after termination of the suit, that the class representative adequately protected the interest of the class?" The first question involves a collateral review of the trial court's determination to permit the suit to proceed as a class action, while the second involves a review of "the class representative's conduct of the entire suit - an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment...." The court held that the
>
>> primary criterion for determining whether the class representative had adequately represented his class for purposes of *res judicata* is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class. A court must view the representative's conduct of the entire litigation with this criterion as its guidepost.
>
> The adequacy inquiry following final judgment "necessarily requires a hindsight approach to the issue of adequate representation, and in no way reflects on the [district] court's conclusion [at the outset] that the [class representative] would adequately represent the class." After consideration of these standards, the Gonzales court concluded that the representative's failure to appeal an order denying

---

[44]*Pelt*, 539 F.3d at 1282 (citing *Taylor v. Sturgell*, --- U.S. ----, 128 S.Ct. 2161, 2176 (2008)) (internal citations omitted).

[45]*Shutts*, 472 U.S. at 811-12.

[46]*Pelt*, 539 F.3d at 1285.

[47]474 F.2d 67 (5th Cir. 1973).

retroactive relief to all class members except the representative constituted inadequate representation of the class.[48]

The Tenth Circuit continued by distinguishing *Gonzales*, a case that involved a collateral attack under Rule 23(b)(2), from cases similar to the instant case, certified under Rule 23(b)(3).

> There are no mandatory notice requirements in subsections (b)(1) and (b)(2) actions, and members do not have the opportunity to opt out of the class, opportunities accorded to subsection (b)(3) class members. As a result of these distinctions, class members in (b)(1) and (b)(2) actions must necessarily rely on the representative to protect their interests. Therefore, the propriety and adequacy of representation accorded to absent class members by the named parties in (b)(1) and (b)(2) actions should be critically evaluated before their rights are foreclosed.[49]

The Tenth Circuit concluded by recognizing the importance of final judgments, noting that "the adequacy of representation inquiry [does not require the] second-guessing of every litigation decision."[50] Thus, " '[d]ue process entitles class members to notice and to adequate representation. It does not entitle them to continue to challenge the defendant's conduct until they are ultimately successful.' "[51]

### *c. Application to Present Class Claims*

In the case at hand, Plaintiffs seek class certification for all royalty owners of BP from wells located in Kansas that have produced gas and/or gas constituents from January 1, 1985 to present, for claims that include, among others, improper royalty calculations and payment, or not receiving any royalty payment at all on natural gas liquids ("NGL's") and constituents, such as helium,

---

[48]*Pelt*, 539 F.3d at 1285 (internal quotations and citations omitted).

[49]*Id.* at 1285-86.

[50]*Id.* at 1289.

[51]*Id.* (quoting *Quigley v. Braniff Airways, Inc.*, 85 F.R.D. 74, 77 (N.D. Tex 1979).

nitrogen, and condensate.[52]  Plaintiffs' claims also include violation of an implied covenant by improperly charging royalty owners for placing gas in marketable condition and for improperly charging royalty owners for the Kansas Conservation Fee.

BP argues that both the *Youngren* and *Smith* actions complied with Rule 23 and due process requirements, and resulted in final judgments based on the court's approval of the parties' agreed settlement.  BP asserts that because each of the prior actions was based on the identical factual predicate as the instant case, and because each settlement contained a broad release for all conceivable claims related to the very same royalty instruments as this action, Plaintiffs' claims are barred.  BP argues that Plaintiffs, and in particular, Eatinger, had notice of the prior settlements, and they were provided opportunity pursuant to Rule 23(b)(3) to opt out.  BP contends Plaintiffs failed to make any such objection to the prior settlements, allowing the Court to give *res judicata* effect to the prior judgments.

Plaintiffs contend that neither the *Youngren* nor the *Smith* class action settlements are binding because those actions did not include production dedicated to contracts separate from the Leases dedicated to the 1950 Contract.  Plaintiffs also suggest that, contrary to BP's assertions, the claims of the prior settlements were limited based on the each action's class definition. Specifically, Plaintiffs assert that in *Youngren*, the class was limited to production of gas from above the base of the Panoma Council Oil Field dedicated to the Leases, while in *Smith*, class claims were limited to those persons who owned mineral interests dedicated to the Leases whose royalty payments were reduced on an Mmbtu basis as of FERC Order 451.  As a result, Plaintiffs contend that the prior actions are not binding as those claims were dissimilar to and separate from the instant matter.  In

---

[52]Because class certification will be addressed later by the Court in a subsequent order, we will not address the issues relating so such certification in this Order.

addition, Plaintiffs claim that, in the prior actions, due process was not satisfied in that each class was inadequately represented, the trial courts improperly approved settlement without first evaluating any evidence to determine the value of the unlitigated claims being released, and because the settlement was the result of misstatements and omissions by Defendant. Because of these errors, Plaintiffs contend the Court is precluded from giving *res judicata* effect to the prior class action settlements.

After an extensive review of both the *Youngren* and *Smith* settlement agreements, including each release of claims and the final judgments entered in those cases, the Court concludes that Plaintiffs class claims, in part, are precluded under the doctrine of *res judicata*, as they are substantially similar, if not identical, to those raised in the prior actions. In both *Youngren* and *Smith*, the respective courts entered final judgment after fairly exercising their independent judgment based on their examination of the evidence and submissions of the parties during the fairness hearings. The courts also found that notice provided to the class pursuant to Rule 23(b)(3) was adequate and consistent with due process, and we find nothing in the record to persuade this Court to the contrary. Said notices informed the class of the claims pursued in each action, along with potential claims that were not pursued. The settlement notices also adequately appraised class members as to all claims that the proposed settlements intended to release, and provided the opportunity to opt out of the settlement.[53] Although the releases are broad, they are not so overly-broad or unrelated to the Leases at issue to permit the Court to preclude their enforcement.

In addition to the foregoing, the Court also finds that the named plaintiffs in *Youngren* and *Smith* adequately represented the interests of the absent class members. In each of the prior actions,

---

[53]The named Plaintiff in this action, Eatinger, failed to opt out of either action and, in fact, received payment for his share of the settlement.

the matters involved were vigorously pursued and contested by the parties, demonstrated in part by the fact that *Youngren* had gone on for fifteen years, and *Smith* had been proceeding for seven.[54] The prior courts properly certified each action pursuant to Kansas' relevant version of Rule 23(b)(3), indicating that the procedural safeguards of adequate representation have been satisfied.[55] Absent compelling evidence to the contrary, this Court cannot find otherwise.

Plaintiffs extensively argue that the absent class members' interests were not adequately represented due to the number of claims released or not pursued, and because the amount of settlement allegedly did not adequately reflect the true value of the claims released. Contrary to Plaintiffs' assertions, the fact that the representative members of those classes decided to pursue certain claims and not others is not inconsistent with adequate representation, and we will not second-guess class counsel's strategy or tactics in doing so.[56] So long as there is adequate representation, determined by alignment and protection of interests, due process is satisfied.[57] As BP properly points out, and as previously set forth in this opinion, the parties in the prior actions were represented by competent class counsel, the courts properly reviewed the records before them in certifying the class pursuant to Rule 23(b)(3), proper notice was provided to the class members, and all class members were provided opportunity to opt out of the settlement. Importantly, the prior courts in *Youngren* and *Smith* approved the settlement agreements only after holding a fairness hearing ensuring that the rights of the absent class members were adequately protected. Plaintiffs

---

[54] A vigorous adversarial proceeding is a good indicator that a mutually agreed settlement is fair.

[55] *See Taylor*, 128 S.Ct. at 2176 (minimum requirements for adequate representation "are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23).

[56] *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005) (agreeing that all possible claims need not be brought in a class action to satisfy due process).

[57] *See id.*; *see also Pelt* 539 F.3d at 1286.

have not provided this Court, in response to BP's position, any persuasive argument to the contrary to indicate that those settlements were not fair and appropriate based on the claims arising under the facts of those cases. Therefore, based on the foregoing, the Court concludes that application of *res judicata* to the prior Rule 23(b)(3) class action settlements of *Youngren* and *Smith* is appropriate, and we grant BP's Partial Motion for Summary Judgment as to the class members' claims settled in those two prior actions. Thus, Plaintiffs' claims relating to wells at any time dedicated to the Gas Purchase Contract dated June 23, 1950, as identified in both the Youngren and Smith Settlement Agreements, including the respective release of claims, based on BP's actions, or its predecessors that occurred prior to May 1, 2006, are hereby barred.[58] Contrary to Plaintiffs' contention, claims regarding royalty payments owed for production from wells below the base of the Pamona Council Grove Field are also barred to the extent that those claims relate to the 1950 Contract, as claims related to the 1950 Contract could have been raised in the prior litigations.[59] Claims that are not related to the 1950 Contract or amendments thereto, however, would not be barred by either of the prior settlements or releases, nor are claims related to the 1950 Contract for acts that occurred on or after May 1, 2006. Accordingly, such claims are barred in the instant action under the doctrine of

---

[58]In *Smith*, the Released Claims, as defined in the settlement, precluded any member of the plaintiff or settlement class from asserting claims that at any time related to the 1950 Contract for actions by Amoco/BP that occurred at any time prior to May 1, 2006. Doc. 54-4, pp.3-4. The Court notes that the *Youngren* class definition only included persons owning mineral interests relating to the 1950 Contract *from and after* September 9, 1990, and the *Smith* class definition was limited to claims relating to the 1950 Contract *from and after* January 23, 1987. However, as BP correctly asserts, neither the *Smith* nor *Youngren* settlement or releases, which relate to the same 1950 Contract, contain any such initial timeframe limitation, but instead, said releases apply retroactively from May 1, 2006 and August 2004, respectively. Regardless, because neither party has provided the Court with any insight as to the significance of the September 9, 1990 date within the *Youngren* class definition or the January 23, 1987 date within *Smith* in the context of each action's broad release of claims, we conclude that, in light of these broad releases concerning those acts identified within those prior settlements, Plaintiffs' claims are barred for acts prior to May 1, 2006.

[59]*See Pelt*, 539 F.3d at 1281 (Under the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been* raised in that action.") (emphasis added).

*res judicata* and settlement, and pursuant to the release of claims incorporated into the settlements of those prior actions.

### Eatinger's representation of the putative class

BP also moves the Court for an order that Eatinger is no longer a proper representative of the putative class because all of his claims arise from the same set of facts that are barred by the *Youngren* settlement and the release of claims incorporated therein. BP contends that because Eatinger himself has no claim typical of the putative class, he cannot satisfy the requirements to properly represent the class. Plaintiffs respond by arguing that even if the Court bars certain claims through the application of *res judicata*, Eatinger maintains individual claims representative of the class pertaining to wells and leases never dedicated to the Leases related to *Youngren*. As such, Plaintiffs contend that Eatinger remains a proper class representative.

A non-certified class may not proceed where the representative plaintiff's claims have become moot.[60] Although the Court has barred any claims that are related to those raised or released by *Youngren* and *Smith*, Plaintiffs assert that Eatinger continues to have valid class claims outside of those settlements. Plaintiffs argue that the claims alleged in their Consolidated and Amended Class Action Complaint do not limit their claims solely to the 1950 Contract, but instead include wells that are under leases separate from the 1950 Contract. Because the Court has insufficient information at this time to determine to which leases Eatinger's remaining claims relate, we decline to dismiss him as the named class representative at this time. Thus, BP's motion with respect to this issue is denied.

Accordingly,

---

[60]Sosna v. Iowa, 419 U.S. 393, 399 (1975).

**IT IS THEREFORE ORDERED** that Defendant BP America Production Company's Motion for Summary Judgment on Previously Settled Claims (Doc. 53) is hereby GRANTED in part, and DENIED in part.

**IT IS SO ORDERED.**

Dated this 6th day of May, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE