**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| GENE R. EATINGER, on behalf of himself and all similarly-situated royalty owners,<br><br>*Plaintiff*,<br><br>vs.<br><br>BP AMERICAN PRODUCTION COMPANY,<br><br><br>*Defendant*. | Case No. 07-1266-EFM-KMH |

**MEMORANDUM AND ORDER**

Defendant BP American Production Company ("BP") urges that a combination of prior actions and settlements prohibits Plaintiffs from asserting their present class action claims. BP requests summary judgment on its affirmative defenses that (1) Plaintiffs' claims were previously released; (2) Defendant's actions are permitted by contract; or (3) Plaintiffs' claims are now precluded by *res judicata*. Plaintiffs argue that BP's affirmative defenses are invalid and also move for summary judgment.

There exist material issues of fact as to whether the claims were previously released or are authorized by contract. As a matter of law, the claims are not precluded by *res judicata*. Therefore, the Court denies BP and Plaintiffs' motions for summary judgment on the issues of release and contract authorization. However, as to the issue of *res judicata*, the Court grants Plaintiffs' motion

for summary judgment and denies BP's motion.

**I. There is a long history of related actions and settlements.**

   *a. Helium Settlements*

During the 1980s, Amoco (BP's predecessor) was involved in a variety of actions in both state and federal courts. These cases were primarily based on the claim that the producers, such as Amoco, and royalty owners were not being paid for helium processed at the Jayhawk Plant ("the old Jayhawk Plant") operated by Cities Service Helex, Inc. ("Cities"), who then sold the helium to the U.S. Government. The cases were collectively settled in 1998 in the "Cities Service Helex Helium Settlement" (the "Cities Helium Agreement"). The district court in Sedgwick County, Kansas issued an order approving the Cities Helium Agreement on September 23, 1988. The settlement contemplated that defendant Cities would negotiate future helium agreements with Amoco and the other producers, or that the court would impose such an agreement if the parties did not do so. The landowner-lessors agreed to release their claims against the lessee-producers regarding helium as long as the lessee-producers paid the landowner-lessors royalties on the prices they received from the future helium sales agreements.

As a result of the Cities Helium Agreement, Amoco and the Cities defendants entered into the "Amoco Future Helium Settlement Agreement" ("Future Helium Settlement"). The parties agreed that Amoco would receive an allocation back to the lease amounting to 20% of the latest six-month weighted average price received by the Cities defendants "as if sold at the tailgate of the Jayhawk Plant." This was the starting point of the sum to be paid to the royalty owners. The Future

Helium Settlement was binding on the successors and assigns of the parties to it.

   *b. Youngren II*

In 2001, the case *Youngren v. Amoco Production Co.[1]* ("*Youngren II*") was certified as a class action in state court. Plaintiff royalty owners claimed that Amoco (BP's predecessor) was improperly calculating royalties on the production of natural gas. Throughout discovery, the plaintiffs requested information on how royalties on liquid hydrocarbons and helium at the Ulysses, old Jayhawk, and new Jayhawk plants were calculated. In 2004, the plaintiffs and BP entered into a settlement ("*Yougren II* Settlement") relating to leases on wells in Kansas. The *Youngren II* Settlement was "a release of all possible claims of members of the Plaintiff Class against Amoco or any related company <u>that accrued prior to August 1, 2004</u> that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions."[2] Included in the release was the claim that Amoco improperly deducted expenses incurred to make gas produced from the leases merchantable. The *Youngren II* Settlement was approved by the district court in Stevens County, Kansas on July 1, 2004.

## II. Plaintiffs' current claims are breach of contract, unjust enrichment, and accounting.

Plaintiff Gene Eatinger is a citizen of Kansas with a royalty interest in one or more wells located in Kansas, leased to and produced and/or operated by BP. The class consists of royalty owners of BP-leased wells located in Kansas, Colorado, and Wyoming that have produced gas

---

[1] Case No. 89-CV-22 (Twenty-Sixth Judicial Dist. Ct., Stevens County, Kan.).

[2] Emphasis added.

and/or gas constituents from January 1, 1985, to present. Over 2,300 wells are at issue from Kansas alone. BP American Production Company (and its predecessors and successors), a Delaware corporation with its principal place of business in Texas, is the defendant in this case.

At the heart of Plaintiffs' claims is the contention that BP underpays or fails to pay royalties on natural gas and/or constituents of the gas stream produced from Plaintiffs' wells. They claim that Plaintiffs are essentially forced to blindly accept royalties paid by BP while BP uses deceptive tactics to manipulate the amounts of the royalties it pays. Plaintiffs argue that BP employs a number of methods to circumvent the implied "Marketable Condition" law, which requires a lessee (in this instance, BP) to bear all of the costs of placing the gas in marketable condition.

Plaintiffs' first claim is for breach of contract. They argue that the oil and gas leases between the royalty owners and BP include implied covenants that require BP to bear the cost of placing the gas and its constituent parts in marketable condition, as well as the obligation to properly account for and pay royalty interests. Plaintiffs claim that BP has breached the implied covenants, and that Plaintiffs have incurred damages in the form of reduced royalty payments.

Plaintiffs' second claim is for unjust enrichment. They assert that BP has received or retained money that belongs to Plaintiffs, which caused an increase in Defendant's cash, revenue, and profits. Plaintiffs claim that Defendant's retention of the monies is unjust.

Plaintiff's third and final claim is for an accounting. They seek an equitable accounting and disgorgement (plus interest) for monies wrongfully retained.

**III. The summary judgment standard requires no genuine issue as to any material fact.**

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4]  A fact is "material" when "it is essential to the proper disposition of the claim."[5]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Id.*

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[8] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

trial from which a rational trier of fact could find for the nonmovant."[10]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

Summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

Further, there is a heightened standard for summary judgment when a defendant asserts an affirmative defense, such as here where BP asserts claim preclusion. "[The moving party] cannot force the nonmoving party to come forward with 'specific facts showing there [is] a genuine issue for trial' merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact . . . Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[15]

---

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11] *Adler*, 144 F.3d at 671.

[12] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

**IV. The parties raise three arguments for the Court's consideration.**

BP argues that Plaintiffs' claims are barred for at least three reasons: (1) the claims were settled and released in prior actions; (2) under controlling Kansas precedent, various contracts to which Plaintiffs are parties, or are in privity to, authorize the deductions of which Plaintiffs complain; and (3) *res judicata* bars the re-litigation of Plaintiffs' claims.[16] Plaintiffs contend that their claims are not barred, and respond by requesting summary judgment on Defendant's affirmative defenses.[17]

*a. Release of Claims*

The issue relating to the release of claims is whether the settlements in the prior actions contain releases that prohibit Plaintiffs' claims here. It is BP's position that they do. BP believes the Cities Helium Agreement released all claims in connection with present and future helium payments for so long as the landowner-lessor class received payments under the agreement (BP claims that all payments have been properly made). BP believes the *Youngren II* Settlement released all claims relating to deductions to make the gas marketable.

Plaintiffs argue that the prior settlements did not release their present claims because the Helium Agreement applied only to claims about crude helium sold by Cities and extracted at "the

---

[16] The parties sometimes framed the issues differently, and did not always respond to the other's arguments. The Court has attempted to define and address the issues before it.

[17] In Plaintiffs' response to Defendant's motion for summary judgment, they seek two strike two affidavits. A motion to strike is not a proper method to address an opponent's affidavits. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2011). Plaintiffs' basic contention is that the affidavits are not admissible as evidentiary evidence. Therefore, Plaintiffs should have disputed each of the facts proposed by Defendant that relied on those affidavits, on the ground that the facts were not supported by admissible evidence. In determining which facts are disputed, the Court considers the challenges Plaintiffs raise about the affidavit's admissibility.
The Court finds that the settlement documents themselves are the best evidence of their intent and contents.

Jayhawk Plant," which they argue refers to a plant that no longer exists (what has been referred to throughout as the "old Jayhawk Plant"). They claim that the present claims concern BP and the new Jayhawk Plant – as opposed to Cities and the old Jayhawk plant – so one has no bearing upon the other. Plaintiffs reference a specific excerpt from the Future Helium Settlement that provides the agreement will terminate upon "the construction of a new helium extraction facility." They argue that, accordingly, the settlement applied only to an old plant that no longer exists, and has since terminated.

BP argues that it is the assignee and/or successor in interest to WNG and OXY Helex under the Helium Settlement. BP argues that the "old" and "new" Jayhawk plants processed the same gas that was transported on the same gathering lines from the same leases. As such, BP argues that the new plant is simply the successor to the old one.

Plaintiffs also argue that the Helium Settlement only involved BP as producers, not as plant owners. Accordingly, they state that the agreement only applies to sales by Cities, not those by BP. Further, they argue that the sales they presently complain of are not covered by the Helium Settlement because the sales are to Praxair, as opposed to the sales between Cities and Amoco that the Helium Settlement intended to regulate.

As for the *Youngren II* Settlement, one of the most disputed excerpts appears to be: "Plaintiffs agreed to provide a release of all possible claims of the Plaintiff Class against Amoco or any related company that accrued prior to August 1, 2004 that is as broad, comprehensive and inclusive as can be permitted in settlement of class actions." BP cites other excerpts from the settlement that it asserts stand for the proposition that the *Youngren II* plaintiffs specifically released

-8-

claims that Amoco improperly deducted expenses incurred to produce the gas and make it marketable.

Plaintiffs argue that only claims for wrongful deductions were addressed by the settlement. Plaintiffs emphasize the importance of the agreement language that releases "all possible claims . . . that had accrued prior to August 1, 2004." They argue that the release carefully restricted the release to the period before August 1, 2004, and that their present claims relate to deductions that took place after July of 2004.

BP argues that the issue is not whether BP properly made royalty payments each time, but whether BP used the proper and consistent calculation in making the royalty payments. They assert that this issue was already litigated in the Helium Settlement and *Youngren II*, and that Plaintiffs are simply attempting to get a second bite at the apple.

"[W]here the court determines that the release is ambiguous with respect to its scope or meaning, there is a question of fact raised, requiring resort to extrinsic evidence to determine the parties' intent."[18] After reviewing the settlement agreements, the Court finds that the releases are ambiguous in several ways: the meaning of "the Jayhawk Plant" in the Helium Settlement, whether the Helium Settlement is binding upon BP as a producer, and the meaning of "claims accrued prior to August 1, 2004" in the *Youngren II* Settlement. Therefore, there are questions of fact and summary judgment is improper on the basis of release. Both parties' summary judgment motions are denied.

---

[18] 29 Richard A. Lord, *Williston on Contracts* § 73:7 (4th ed. 2011).

*b. Existing Contracts Argument*

The issue relating to the existing contracts argument is whether the prior settlements constitute contracts that authorize BP to make the deductions at issue here. BP argues that the Helium Settlement and *Youngren II* Settlement are contracts that authorize the deductions here – an assertion about which the parties argue at length. However, the Court does not need to reach those arguments. The same ambiguity that restrains the "release of claims" argument prohibits resolution of this issue – some of the language in the settlements is unclear, leaving questions of fact. The Court cannot grant summary judgment on the claim that existing contracts authorize deductions when the meaning of the those contracts is unclear. Accordingly, summary judgement is denied as to both parties' motions on contract authorization.

*c. Res Judicata Argument*

The issue here is whether the prior actions and settlement bar the Plaintiffs' current claims under the doctrine of *res judicata*. "Res judicata forecloses the litigation of matters that could or should have been advanced in an earlier action."[19] "The question whether res judicata applies is an issue of law."[20]

BP argues that *res judicata* precludes Plaintiffs' claims, while Plaintiffs argue that *res judicata* is inapplicable here. It is BP's position that Tenth Circuit law dictates the rule for claim

---

[19] *Cosgrove v. Kan. Dep't of SRS*, 744 F.Supp.2d 1178, 1184 (D. Kan. 2010) (citing *In Re Estate of Reed*, 693 P.2d 1156, 1160 (Kan. 1985)).

[20] *O'Keefe v. Merrill Lynch & Co.*, 84 P.3d 613, 618 (Kan. App. 2004).

-10-

preclusion, while Plaintiffs correctly claim that Kansas's law of claim preclusion controls.[21] "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."[22] Here, most of the actions occurred in Kansas state court, and Kansas state courts approved and journalized both settlements. Therefore, Kansas's law of claim preclusion applies.

"Under Kansas law, '[r]es judicata (claim preclusion) prevents relitigation of previously litigated claims and consist[s] of the following four elements: (1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits."[23] Here, Plaintiffs primarily contest the "same claim" requirement and argue that the same claims were not involved in the prior actions as the ones involved here.

Kansas case law sheds little light on the "same claim" inquiry; however, many cases indicate that the Kansas Supreme Court endorses the "transactional approach" employed by the Tenth Circuit.[24] "To determine whether separate legal theories comprise the same transaction or series of transactions, courts examine whether the facts are related in time, space, origin, or motivation and

---

[21] Neither party explained why the law it asserts should apply; rather, each simply stated the law it desired to apply and then explained how that law would be helpful to that party's case.

[22] *Xiangyuan Zhu v. St. Francis Health Center*, 215 Fed.Appx. 717, 719 (10th Cir. 2007) (internal citations omitted).

[23] *Id.*

[24] *See, e.g., Cosgrove*, 744 F.Supp.2d at 1186 ("The court believes that the Kansas Supreme Court would adopt the transactional approach, because it has already tacitly done so."); *Stanfield v. Osborne Industries, Inc.*, 949 P.2d 602, 604 (Kan. 1997) ("In the more complicated case, where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one **transaction**; a judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action." (emphasis added)); *Xiangyuan*, 215 Fed.Appx. at 717 ("Kansas appears to approve of this transactional approach.").

whether they would form a convenient trial unit."[25]

The Court will attempt to summarize the prior and current claims to determine whether they are the "same claims" for the purpose of res judicata.

1. In the Helium cases, the basic claim was that royalty owners and producers (such as Amoco, BP's predecessor) were not being paid for helium that was processed at the old Jayhawk Plant. Cities operated the plant and sold the helium to the U.S. Government.

2. In the *Youngren II* cases, the basic claim was that Amoco was improperly calculating royalties on the production of natural gas. The *Youngren II* Settlement included a provision that all claims that accrued prior to August 1, 2004 were being released.

3. In the present case, the basic claim is that BP is underpaying or failing to pay royalties on natural gas and/or its constituents produced from the Plaintiff royalty owners' wells. Plaintiffs assert that their claims relate to claims accruing after July of 2004.

The Court is not persuaded by the Defendants' arguments that the Plaintiffs' current claims constitute the "same claim" as those previously asserted for the purposes of *res judicata*. After consideration of the facts using the "transactional approach" factors, the Court finds that the same claims are not at issue. The Helium cases originated and were settled in the 1980s, and Plaintiffs' current claims purportedly relate to activities occurring after July of 2004. These claims are not related in time. They are not related in space because the Helium claims related to processing at the

---

[25] *Cosgrove*, 744 F.Supp.2d at 1187 (citing *Rhoten v. Dickson*, 223 P.3d 786, 799 (Kan. 2010)).

old Jayhawk Plant, and the present claims relate to processing at the new Jayhawk Plant – regardless of whether the parties intended for the new Jayhawk Plant to be the successor-in-interest to the old Jayhawk Plant. As for origin, the claims are vastly different. Amoco joined up with Plaintiffs in the Helium actions to pursue Cities for the deductions it made. Here, Plaintiffs are suing BP (Amoco's successor) for the deductions it has made. The sets of claims appear to have originated from different circumstances, which is demonstrated by how differently the parties were situated in the two actions. The Court is reluctant to speculate as to the parties' motivations for each action[26], but the difference in their roles in the two cases does indicate at least some difference in motivation. Finally, the Court finds that these cases would not have formed a convenient trial unit, as the claims and parties would likely be too complex for a single trial.

The *Youngren II* Settlement purportedly relate to claims accruing before August 1st, 2004. The current claims purportedly relate to claims accruing after July of 2004. They are not related in time. The space concerns are similar to those expressed above. The origin of the different claims are somewhat similar. The Court is again reluctant to speculate as to the motivations for each claim. Given the complexity and range of time, it is difficult to discern whether the cases would have formed a convenient trial unit.

Because the Court finds that the same claims are not present as a matter of law, further inquiry into the *res judicata* requirements is unnecessary. Plaintiffs' motion for summary judgment as to the affirmative defense of *res judicata* is granted. Defendant's motion for summary judgment

---

[26] The different positioning of the parties in the cases appears to relate more to whether the same parties are involved, rather than their motivations for being involved.

as to *res judicata* is denied.

**IT IS ACCORDINGLY ORDERED** that BP's Motion for Summary Judgment (Doc. 195) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 206) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated this 24th day of January, 2012, in Wichita, Kansas.

*/s/ Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE